## Case No. 12,336.

### The SARAGOSSA.

[2 Ben. 544.] [1]

District Court, S. D. New York.    Nov., 1868.

SHIPPING—DELIVERY OF CARGO—GOODS NOT PUT ON BOARD—LIEN.

1. Where a libel alleged that 303 bales of cotton were shipped on board a steamer to be carried to New York, and that a bill of lading therefor, a copy of which was attached, was signed by the agents of the vessel, and that seven of the bales were not delivered, and were not lost by perils of the sea, and the answer admitted that the vessel agreed to carry the 303 bales, and that her agents signed a bill of lading, and alleged that a copy of it was attached to the libel, and alleged that only 273 bales were ever received on board the vessel, but that the rest were brought to New York by another vessel, and discharged upon the wharf, on due notice to the consignee, *held*, that on the pleadings, the authority of the agents to bind the vessel by the contract in the bill of lading must be considered as admitted;

2. On the bill of lading, the burden of proof was on the vessel to show that the bill of lading was signed for bales of cotton that were never received on board the vessel;

[Cited in Crenshawe v. Pearce, 37 Fed. 435.]

3. That fact was not proved by the mere statement of the purser of the vessel, that they received 303 bales, and left 30 behind;

4. There was no proof of the delivery of the seven bales at New York, and the vessel was liable for their value.

In admiralty.

Robert D. Benedict, for libellants.

Welcome R. Beebe, for claimant.

BLATCHFORD, District Judge. The libel avers the shipment on board of the steamship Saragossa, at Charleston, on the 17th of November, 1866, of 303 bales of cotton, under an agreement by the vessel to carry them to New York, and deliver them there to the agent of the libellants. such agreement being set forth in a bill of lading signed by the agents of the vessel. A copy of the bill of lading is annexed to the libel. It states that the 303 bales of cotton have been received "by E. N. Fuller, R. & F. agent S. C. R. R. steamship called the Saragossa, whereof ——— is master. now lying in the port of Charleston, S. C., and bound for New York." It gives the marks and numbers on the bales, and states that they are to be delivered at the port of New York, the danger of the seas only excepted. It is not signed by the master or purser of the vessel, but is signed "Ravenel & Co., Agents." The libel avers that the contract of the vessel was not performed by her, in that seven of the bales were never delivered in New York, and were not lost by dangers of

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

the sea. The amount of damages claimed is $1,291.39.

The answer admits that the vessel agreed to carry the 303 bales of cotton to New York, and deliver the same there to the person named in the bill of lading, and that the agents of the vessel signed a bill of lading for the cotton, wherein the agreement was more fully set forth, and that a copy of such bill of lading is annexed to the libel. The answer also avers that all of the bales of cotton that were taken on board under the bill of lading were delivered at New York; that on the arrival of the vessel at New York, with cotton on board received under the bill of lading, due notice of her arrival, and that he was required to attend to the receipt of the cotton laden on board, was given to the consignee named in the bill of lading; that thereafter the bales of cotton which were actually shipped on the vessel were duly discharged from the vessel, and that the vessel, both by law and the custom of the port, was entirely discharged from liability therefor; that only 273 bales of the cotton mentioned in the bill of lading were ever taken or received on board of the vessel; that those 273 bales were actually discharged upon the wharf from the vessel, on due notice to the consignee; and that the rest of the 303 bales were afterward brought to New York by the steamship Granada, and were, upon due notice, discharged upon the wharf, and delivered to the consignee.

It being admitted in the answer that the vessel agreed to carry the 303 bales of cotton to New York, and that the agents of the vessel signed the bill of lading in question, the authority of such agents to bind the vessel, by signing the bill of lading, to whatever contract is set forth therein, must be considered as admitted and established, although the bill of lading is not signed by the master or purser of the vessel. The libellants gave no evidence in regard to the bill of lading, or in regard to the shipment of the cotton on board of the vessel. Their case, in this respect, rests wholly on the admissions of the answer. The bill of lading, though very inartificial, must, I think, be fairly interpreted as averring that the 303 bales of cotton were received on board of the Saragossa to be carried to New York. In the face of that evidence, it is for the claimant to show that the bill of lading was signed for bales of cotton that were never received on board of the vessel, in order to relieve her from responsibility. This the claimant undertook to do, but the evidence fails to show it. It is clear that the seven missing bales were part of the 303 bales. The purser of the vessel merely states that they received 303 bales in Charleston, and left 30 behind. Those 30, it is shown, were brought by the Granada. But the evidence on the part of the claimant is entirely consistent with the fact that the entire 303 bales were, as stated in the bill of lading, received on board of the Saragossa, and that then 30 of them were put back upon the wharf. The libellants received the 273 bales which

the Saragossa brought, and 23 of the 30 which the Granada brought. The libellants had a right to rely on the bill of lading, and it was easy for the claimant to have shown, if the fact was so, that only the 273 bales went on board of the Saragossa, and that thus the bill of lading was signed for bales that were never received on board of her, so as to relieve the vessel from liability for any more than the 273 bales. The claimant has not made such proof, nor has he shown that the seven bales in question were delivered to the libellants at New York, according to the tenor of the bill of lading.

There must be a decree for the libellants, with a reference to ascertain the damages sustained by them.